# Quaker Oats Company, Appellant, v. Armour Grain Company, Appellee.

## Gen. No. 19,252.

1.  WAREHOUSEMEN, § 25*—*when shipper not entitled to money paid warehouseman by carrier for transferring grain.* A shipper who has paid a company operating a public warehouse its charges for storage, etc., as provided by section 15 of the act regulating public warehouses, J. & A. ¶ 8979, is not entitled to recover from it the additional charges paid to it by carriers for transferring the grain from cars to elevator and from elevator to cars on the theory that the warehouse company was the shipper's agent in receiving the additional charges and that the additional charges are for the same services.

2.  WAREHOUSEMEN, § 11*—*what charges not included in schedule of rates.* The schedule of rates required to be published by warehousemen under section 15 of the act regulating public warehouses is of rates for the storage of grain and does not cover rates for transferring grain from car to elevator and from elevator to car.

Appeal from the Circuit Court of Cook County; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed May 25, 1914.

CHESTER ARTHUR LEGG, for appellant.

WINSTON, PAYNE, STRAWN & SHAW, for appellee; RALPH M. SHAW, of counsel.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit in *assumpsit*, seeking to recover certain moneys paid to defendant by railroads for elevator services in connection with shipments of grain. The case was tried by the court upon a stipulation of facts and the testimony of witnesses. The issues were found for the defendant, and from the judgment thereon the plaintiff has appealed.

Plaintiff is engaged in the business of buying grain and shipping it to various eastern points. The defendant owns and operates public elevators in Chicago. The particular facts involved in this case are typical of what probably are the facts in a very large volume of business. In 1910, plaintiff caused to be delivered by cars from the west to the public elevators of the defendant 312,224 bushels of grain, and later in the same year ordered the grain loaded out of the elevators into the cars of eastbound railroad carriers. These carriers, under a certain published tariff, paid to the defendant one-fourth of one cent a bushel for the services of the elevators in transferring the grain through the elevators from the cars coming from the West and arriving in Chicago, to the cars of the eastbound carriers. This amounted to $780.56, which is the amount for which plaintiff brought suit.

The theory of plaintiff is that the defendant, as a public warehouseman, in transferring the grain was the agent of the plaintiff, and that after defendant had received from plaintiff the highest charges for its services which it is permitted to charge under the laws of Illinois and its published schedule for the year, it cannot collect from the carriers and retain additional compensation for the same service, but must pay over this sum to its principal, the plaintiff.

This service of transferring grain, the compensation therefor, and the conditions under which the carriers may call upon elevators for it, are stated in the pub-

lished tariffs of the carriers filed with the Interstate Commerce Commission, and which substantially are as follows:

"When grain, in carloads, is transferred, and the transfer facilities used are not owned or operated by this company, this company will pay to the owner or operator for the transfer service not to exceed one-fourth (¼) of one (1) cent per bushel providing transfer becomes necessary on account of one or more of the following reasons; (a) Bad order cars; (b) to secure heavier loading; (c) to release cars which owners will not allow to run through; (d) when condition of the grain calls for transfer to protect railroads from loss; (e) to secure the weight of grain not previously officially or regularly weighed; (f) when required by state laws of inspection; (g) when transfer at junctions is required by Board of Trade rules."

We are of the opinion that defendant in transferring the grain as above described was not, in so doing, acting as the agent of the plaintiff, but was performing the service for the carrier. For the time being the defendant was the hand of the carrier, and for rendering such services was entitled to receive and retain reasonable compensation from the carrier.

The cases cited by plaintiff's counsel as to the general fiduciary character of a public warehouseman as custodian of grain are not applicable to this particular form of service. In *Interstate Commerce Commission v. Diffenbaugh*, 222 U. S. 42, these services are considered and treated as "services in transportation," and the Court says, speaking through Mr. Justice Holmes: "As the carrier is required to furnish this part of the transportation upon request he could not be required to do it at his own expense, and there is nothing to prevent his hiring the instrumentality instead of owning it." This opinion describes the conditions which brought about the practice of carriers paying elevators for transferring grain, and its reasoning and conclusion are adverse to plaintiff's contention.

A plausible basis for plaintiff's position is sought in the deduction attempted from the provisions of the Illinois statute regulating public warehouses. It is said that by this statute (section 15, J. & A. ¶ 8979) defendant was required on the first of the year to publish a schedule of rates or charges for receiving, storing and delivering out grain from its warehouses and elevators during the ensuing year, which charges could not be exceeded during the year; that plaintiff paid defendant the charges for these services; that these services included the operation of transferring the grain, for which defendant also collected compensation from the carrier; hence plaintiff can recover this amount of compensation from the defendant. We have some doubt whether this conclusion follows from the premises stated; however, the error in the argument lies in the assumption that plaintiff in paying defendant at its published rates was paying for the particular service in question. This error arises from a misconstruction of the statute. The table or schedule of rates required to be published at the first of the year is of rates for "the storage of grain." We find no provision calling for the publication of rates for transferring grain, or any other operation in connection therewith except "storage." There is a provision that, "The maximum charge for storage and handling of grain, including the cost of receiving and delivering, shall be, for the first ten days or part thereof, one and one-quarter (1¼) cents per bushel, and for each ten days, or part thereof, after the first ten days one-half of one cent per bushel." This manifestly contemplates a number of operations by the elevator with respect to the grain, but that the aggregate charge for storage plus the charges for handling and for receiving and for delivering shall not exceed the amounts stated in the statute. The schedule published by defendant in compliance with the statute contained nothing concerning charges for handling or receiving or delivering grain, but only the rates for storage. We

do not agree with the contention that the word "storage" includes the operation of "transferring" grain to cars. The dictionaries give different meanings to the words, and the witness who testified on this point said that "loading" was an entirely different service from "storage"; that "loading in" was a different service from "loading out"; that "handling" was a distinct service from either of the above and had reference to such operations as drying the grain; that it cost a certain specific sum to "load" grain into an elevator, an additional sum to "store" it, an additional sum to "handle" it and an additional sum to "load it out." These considerations lead us to conclude that plaintiff in proving that it paid the defendant the rates in the published schedule proved that it paid only for the service of "storage" and not for the service of transferring the grain, for which latter service defendant collected from the carrier, and is entitled to retain such compensation.

In our opinion the claim of plaintiff is directly in conflict with the theory upon which the Supreme Court of the United States decided. *Interstate Commerce Commission v. Diffenbaugh, supra.* The judgment of the trial court was in accord with that decision and our construction of the Illinois statute as heretofore stated.

We are impressed with the argument of counsel for defendant that to permit plaintiff to recover this charge would be in effect the allowance of a rebate to it from the published tariff rates for transportation on file with the Interstate Commerce Commission, but we refrain from discussing this suggestion as the reasons above indicated seem to us sufficient and conclusive.

The judgment is affirmed.

*Affirmed.*